

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **JONATHAN MONTGOMERY,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86910** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **AUGUST 27, 2024** |
| **CORESLAB STRUCTURES** | ) | |
| **(MISSOURI), INC.,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Saline County, Missouri**
The Honorable Dennis A. Rolf, Judge

Before Division One:  Edward R. Ardini, Jr., Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Jonathan Montgomery ("Montgomery") appeals from the trial court's grant of

summary judgment in favor of Coreslab Structures (Missouri), Inc. ("Coreslab") which

held that Montgomery was a statutory employee of Coreslab, pursuant to section

287.040.1,[1] and that Coreslab was thus liable under the Missouri Workers' Compensation

Law for Montgomery's injuries to the exclusion of common law claims for tort liability.

Montgomery claims the trial court erred because he is not a statutory employee under

section 287.040.1 and, alternatively, because even if he is a statutory employee, he is

---

[1]All statutory references are to RSMo 2016 as supplemented through June 27, 2022, unless otherwise indicated.

subject to the "for-hire motor carrier" exception described in section 287.040.4. Finding no error, we affirm.

## Factual and Procedural History[2]

On January 28, 2020, Montgomery was in the process of loading a concrete beam onto a trailer for delivery when a Coreslab employee hit the beam with a Coreslab vehicle. This resulted in the beam striking Montgomery in the back and throwing him from the trailer. Montgomery suffered injuries to his back and knee. Montgomery has not sought nor recovered workers' compensation benefits from Coreslab for his injuries.

On the day of the incident, Montgomery was working as a driver for Becker Trucking, LLC ("Becker"). Montgomery used a Peterbilt tractor which was owned by Becker to haul and deliver Coreslab products in accordance with a contract between Becker and Coreslab. Pursuant to this contract, Becker has been occasionally hired by Coreslab since 2016 to provide supplemental drivers as needed when Coreslab does not have enough truck drivers of its own. In the absence of the contract with Becker Coreslab would have to hire additional truck drivers. Montgomery was compensated for each job he completed for Becker as an independent contractor.

---

[2]"When reviewing the entry of summary judgment, we view the record in the light most favorable to the party against whom the judgment was entered and accord the non-movant all reasonable inferences from the record." *Cox v. Callaway Cnty. Sheriff's Dep't*, 663 S.W.3d 842, 845 n.1 (Mo. App. W.D. 2023) (quoting *Show-Me Inst. v. Off. of Admin.*, 645 S.W.3d 602, 604 n.2 (Mo. App. W.D. 2022)). We have compiled the factual background from the properly supported uncontroverted facts contained within the summary judgment pleadings. *Id.* (citation omitted).

2

On June 6, 2022, Montgomery filed a petition for damages against Coreslab International, Inc. alleging negligence and respondeat superior, as well as negligent hiring, training and supervision. Montgomery amended his petition to substitute Coreslab as the defendant because Coreslab International, Inc. was not the proper defendant. Coreslab filed an answer to Montgomery's First Amended Petition on July 19, 2022, asserting as an affirmative defense that Montgomery was a "statutory employee" of Coreslab under section 287.040.1 and that the exclusive remedy for his injuries was pursuant to the Workers' Compensation Law.

Coreslab filed a motion for summary judgment arguing that uncontroverted material facts established that Montgomery was Coreslab's statutory employee and that his injuries were subject exclusively to the Workers' Compensation Law. Montgomery filed a response to the motion for summary judgment and a statement of additional material facts. Coreslab filed a reply to Montgomery's statement of additional material facts.

The trial court granted Coreslab's motion for summary judgment on November 28, 2023 ("Judgment"). The trial court found that no genuine issues of material fact were in dispute. The trial court found that Coreslab was in the business of creating concrete beams and transporting them to its customers; that Montgomery was a contract employee of Becker; that Coreslab contracted with Becker to transport its concrete beams; that Montgomery was injured on Coreslab's premises while a beam was being placed on his trailer for transport; and that on the date of Montgomery's injury, Coreslasb was insured under a policy of workers' compensation insurance. The trial court thus concluded that

3

Coreslab was entitled to judgment as a matter of law on its affirmative defense of exclusivity of the Workers' Compensation Law because Montgomery is a statutory employee of Coreslab.

Montgomery appeals.

## Standard of Review

"The grant of summary judgment is an issue of law that an appellate court reviews *de novo*." *Switzer Living Tr., U/A Dated Feb. 5, 2019 by and Through Switzer v. Lake Lotawana Ass'n Inc.*, 687 S.W.3d 476, 482 (Mo. App. W.D. 2024) (citing *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020)). "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Cox v. Callaway Cnty. Sheriff's Dep't*, 663 S.W.3d 842, 847 (Mo. App. W.D. 2023) (internal brackets omitted) (quoting Rule 74.04(c)(6)).[3]

A defending party, like Coreslab, is entitled to summary judgment if they can demonstrate one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to–and will not be able to–produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support [their] properly pleaded affirmative defense.

*Id.* (quoting *Sansone v. Governor of Mo.*, 648 S.W.3d 13, 20 (Mo. App. W.D. 2022)). "Facts come into a summary judgment record ***only*** via Rule 74.04(c)'s numbered-

---

[3]All rule references are to *Missouri Court Rules, Volume 1 -- State, 2023* unless otherwise noted.

4

paragraphs-and-responses framework." *Hynes v. Mo. Dep't of Corr.*, 689 S.W.3d 516, 525 (Mo. App. W.D. 2024) (emphasis in original) (quoting *Green*, 606 S.W.3d at 117). "Courts determine and review summary judgment **based on that Rule 74.04(c) record, <u>not</u> the whole trial court record**." *Id.* (emphasis in original) (quoting *Green*, 606 S.W.3d at 117). "Parties cannot cite or rely on facts outside the 74.04(c) record." *Id.* (quoting *Green*, 606 S.W.3d at 117).

### Analysis

Montgomery raises two points on appeal challenging the trial court's grant of summary judgment in favor of Coreslab. In his first point, Montgomery argues that the trial court erred in entering summary judgment because he is not a statutory employee as defined by section 287.040.1. In his second point, Montgomery alternatively contends that if he does qualify as a statutory employee he is nonetheless eligible for the for-hire motor carrier exception described in section 287.040.4.

***The trial court did not err in granting summary judgment because the uncontroverted facts establish that Montgomery is a statutory employee of Coreslab. (Point One)***

In his first point on appeal, Montgomery argues that the trial court erred in finding that he is a statutory employee of Coreslab. Specifically, Montgomery contends that "he was not performing work in the usual course of Coreslab's business" because the work he was completing was "episodic" and "sporadic."

The Workers' Compensation Law creates an exclusive remedy for employees for personal injury or death by accident or occupational disease arising out of and in the course of an employee's employment, irrespective of negligence. Section 287.120.1. The

exclusive liability of an employer under the Workers' Compensation Law extends to "[a]ny person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on[.]" Section 287.040.1. Thus, any person who qualifies as a "statutory employee" pursuant to section 287.040.1 is exclusively entitled to recovery under the Workers' Compensation Law for injuries arising out of and in the course of a statutory employers' business irrespective of negligence.

Montgomery does not dispute that the uncontroverted facts establish that he was performing work for Coreslab under contract, and that he was injured on or about Coreslab's premises, two of the three essential elements of statutory employee status. Montgomery asserts, however, that the work he was performing was not an operation of the usual business of Coreslab.

A putative employer's "usual business" is defined as:

> those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

*Brooks v. Laurie*, 660 S.W.3d 394, 401-402 (Mo. App. W.D. 2022) (quoting *Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 621 (Mo. banc 1995)). "In so defining 'usual business,' the *Bass* Court specifically sought to exclude from its definition 'specialized or episodic work that is essential to the employer but not within the employer's usual business as performed by its employees.'" *Id.* at 402 (quoting *Bass*, 911 S.W.2d at 621). Determining "[w]hether a particular sort of work is within a party's usual course of

6

business is a fact-driven inquiry; there is no 'litmus paper' test." *Id.* at 402 (quoting

*McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 480 (Mo. banc 2009)).

However, "where 'the facts are not in dispute as to the nature of the agreement and the

work required by it, the existence or absence of statutory employment is a question of law

for the courts to decide.'" *Id.* at 400 (quoting *McCracken*, 298 S.W.3d at 476).

Here, Montgomery argues that the work he was performing was not in Coreslab's

"usual business" because Becker was only called upon by Coreslab from time to time as

needed. He argues that this renders the work he was performing to be "episodic" and

"sporadic." We disagree.

Coreslab alleged in its statement of uncontroverted facts that hauling the concrete

beams it makes to its customers is routinely done by Coreslab on a regular and frequent

basis. Montgomery objected to this uncontroverted fact on the basis that it "is not a

material fact" for purposes of Coreslab's motion for summary judgment and that he was

without sufficient information to admit or deny whether Coreslab hauls beams on a

regular basis. This response is baffling in light of Montgomery's current position on

appeal as the "fact" asserted by Coreslab is central to determining the first two parts of

the "usual business of an employer" definition outlined in *Bass*. 911 S.W.2d at 621. In

addition, Montgomery's response failed to comply with Rule 74.04 rendering the

uncontroverted fact admitted.

"Rule 74.04 governs summary judgment practice in Missouri and compliance with

the rule is mandatory." *Cox.*, 663 S.W.3d at 848 (quoting *Great S. Bank v. Blue Chalk

Constr.*, 497 S.W.3d 825, 828 (Mo. App. S.D. 2016)). When determining whether

summary judgment is appropriate, a court can *only* consider the summary judgment record created pursuant to Rule 74.04(c). "To accomplish this showing, the movant must attach to the motion for summary judgment a statement of uncontroverted material facts that 'state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue . . . .'" *Hynes*, 689 S.W.3d at 524 (internal brackets omitted) (quoting *Green*, 606 S.W.3d at 116)). "After the movant makes this submission, the non-movant is required to file a response either admitting or denying the movant's material facts." *Id.* (citation omitted). Montgomery did neither as he stated that there was insufficient information to admit or deny Coreslab's uncontroverted facts.[4] Moreover, even if viewed as a denial, "[t]he response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. Attached to the response shall be a copy of all discovery, exhibits or affidavits on which the response relies." *Cox*, 663 S.W.3d at 848 (quoting Rule 74.04(c)(2)). Montgomery's failure to deny Coreslab's uncontroverted fact in this manner renders the truth of the fact admitted. Rule 74.04(c)(2).

Coreslab's uncontroverted facts also alleged that Becker's hauling services are occasionally hired by Coreslab on a temporary basis at times when Coreslab does not have enough truck drivers of its own or its volume of business exceeds its trucking

---

[4]To the extent Montgomery believed he was unable to admit or deny Coreslab's uncontroverted facts due to the need to conduct discovery or for other reasons, under Rule 74.04(f) he should have presented an affidavit explaining the reasons for his inability to admit or deny Coreslab's assertions. *See generally Traweek v. Smith*, 607 S.W.3d 779, 785 (Mo. App. W.D. 2020); *Duncan v. Dempsey*, 547 S.W.3d 815, 821-22 (Mo. App. E.D. 2018). Montgomery failed to submit such an affidavit, however.

8

capacity, a "fact" relevant to the third part of the definition of the "usual business of an employer" outlined in *Bass*. 911 S.W.2d at 621. Montgomery admitted this uncontroverted fact though he did so subject to an objection that the fact is not "material" a position that cannot be reconciled with *Bass*. Moreover, Montgomery admitted in his response to one of Coreslab's earlier uncontroverted facts that in "affidavit B, [Coreslab] states it routinely, over the course of many years, contracts with [] Becker to haul its beams."

Finally, Coreslab's uncontroverted facts allege that if Coreslab did not have its agreement with Becker it would have to hire more in-house permanent truck drivers, a "fact" relevant to the fourth part of the definition of "usual business of an employer" outlined in *Bass*. 911 S.W.2d at 621. Montgomery responded by once again objecting that the fact is not "material" for purposes of the motion for summary--a position that is facially incongruent with the definition of "usual business of an employer" set forth in *Bass*. Montgomery's response continued by acknowledging that the affidavit attached to Coreslab's uncontroverted facts explains that the fluctuation in Coreslab's business requires it to "hire additional drivers from time to time, as needed," but "surmises" that this is not Coreslab's only option. Montgomery then argued that Coreslab could simply tell customers that delivery of its concrete beams will take longer, or it could pay its regular driver's overtime, or it could turn away business. These "surmised" arguments are not supported with specific references to discovery, exhibits or affidavits as required by Rule 74.04(c)(2) rendering the truth of Coreslab's uncontroverted fact admitted.

9

Ironically, the "surmised" arguments actually underscore that without hiring contract drivers from time to time Coreslab would not be able to perform its "usual business."

Montgomery's contention on appeal that his work was not an operation of the usual business of Coreslab is grounded in the misguided belief that Coreslab's "episodic" or "sporadic" use of Becker to assist in hauling concrete beams to its customers renders that work outside the usual business of Coreslab. This argument misapprehends *Bass*, which held that its definition of "usual business" was meant to exclude "specialized or episodic work that is essential to the employer" but only when that "specialized or episodic work" is "not within the employer's usual business as performed by its employees." 911 S.W.2d at 621. Here, it is uncontested that hauling concrete beams it manufactures to its customers is within the scope of Coreslab's usual business. It is irrelevant that Coreslab used Becker to perform this work only from time to time when it needed to.

The trial court did not err in concluding as a matter of law that Montgomery was a statutory employee of Coreslab pursuant to section 287.040.1 and, thus, did not commit error in granting summary judgment in favor of Coreslab on the basis of the affirmative defense of exclusivity of the Workers' Compensation Law.

Point One is denied.

***Montgomery's contention that he qualifies under the exception to statutory employee status applicable to "for-hire motor carriers" is not preserved for our review (Point Two)***

In his second point on appeal, Montgomery contends that even if he qualifies as a "statutory employee" under section 287.040.1 he falls within the "for-hire motor carrier"

10

exception described in section 287.040.4. That section provides that the provisions of

section 287.040:

> shall not apply to the relationship between a for-hire motor carrier operating within a commercial zone as defined in section 390.020 or 390.041 or operating under a certificate issued by the Missouri department of transportation or by the Unites States Department of Transportation, or any of its subagencies, and an owner, as defined in [subdivision (42) of] section 301.010, and operator of a motor vehicle.

Montgomery's contention is fatally flawed because it is not preserved for our review.

Montgomery did not raise this "exception" in a reply to Coreslab's answer to Montgomery's amended petition wherein Coreslab raised the affirmative defense of exclusivity of the Workers' Compensation Law based on Montgomery's status as a statutory employee pursuant to section 287.040.1. "An avoidance is 'an affirmative defense to an affirmative defense.'" *Rosales v. Benjamin Equestrian Ctr., LLC*, 597 S.W.3d 669, 683 (Mo. App. W.D. 2019) (quoting *Allen v. Titan Propane, LLC*, 484 S.W.3d 902, 905 (Mo. App. S.D. 2016)). An avoidance to an affirmative defense must be pled in a timely filed reply or it is waived. *Id.* (citing *Billings Mut. Ins. Co. v. Cameron Mut. Ins. Co.*, 229 S.W.3d 138, 143 (Mo. App. S.D. 2007); Rule 55.01 ("A defense consisting of an affirmative avoidance to any matter alleged in a preceding pleading must be pleaded"); Rule 55.08 ("In pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses and avoidances . . ."). By failing to raise section 287.040.4 as an avoidance to the affirmative defense of exclusivity in a timely filed reply to Coreslab's answer Montgomery waived the defense. He cannot overcome the waiver by raising the argument for the first time in response to Coreslab's

11

motion for summary judgment.  *See, e.g., Chouteau Auto Mart., Inc. v. First Bank of Mo.*, 148 S.W.3d 17, 26 (Mo. App. W.D. 2004) (holding that raising an affirmative defense in a summary judgment pleading fails to satisfy the requirements of Rule 55.08 and does not operate to amend an earlier filed pleading); *Glasgow Enters., Inc. v. Bowers*, 196 S.W.3d 625, 630 (Mo. App. E.D. 2006) (holding that because an affirmative defense must be properly pled in an answer to be considered in connection with a motion for summary judgment, defendant's failure to raise affirmative defense cannot be relied on to defeat plaintiff's motion for summary judgment); *State ex rel Nixon v. Consumer Auto. Res., Inc.*, 882 S.W.2d 717, 721 (Mo. App. E.D. 1994) (holding that where answer was silent as to any affirmative defenses, defendant could not raise an affirmative defense for the first time in response to a plaintiff's motion for summary judgment).

Even had Montgomery raised his avoidance to the affirmative defense of exclusivity in a timely filed reply to Coreslab's answer, he would not have preserved the issue for our review.  An argument asserted on appeal but not included in the summary judgment record is not preserved for appellate review because "[t]his court's review of the grant of summary judgment is limited to those issues raised in the trial court, and this court will not review or convict a trial court of error on an issue that was not put before the trial court to decide."  *See Old Navy, LLC v. S. Lakeview Plaza I, LLC*, 673 S.W.3d 122, 132 (Mo. App. E.D. 2023) (citation omitted).

Here, there is no reference in the Rule 74.04(c) paragraphs of the summary judgment record to a "for-hire motor carrier" exception nor to the qualifying statutes nor regulations that are referred to in section 287.040.4.  Yet, Montgomery's brief argues that

12

he qualifies as a for-hire motor carrier by referring to numerous facts regarding his operation/ownership of the truck he was driving on the day of his injuries though none of those facts appear in his response to Coreslab's statement of uncontroverted material facts nor in Montgomery's statement of additional material facts. *See Hynes*, 689 S.W.3d at 525 (holding that "[p]arties cannot cite or rely on facts outside the Rule 74.04(c) record").

Montgomery correctly notes that his opposition to Coreslab's motion for summary judgment did summarily argue that the exception to exclusivity of the Workers' Compensation Law described in section 287.040.4 applied. However, this argument was not supported by any reference to uncontroverted facts in Coreslab's motion for summary judgment nor to additional material facts asserted in Montgomery's response. "Arguments . . . that are completely disconnected from the numbered paragraph material facts in the summary judgment record, as required by Rule 74.04, are analytically useless in an appellate review that requires this court to properly apply Rule 74.04." *Cox*, 663 S.W.3d at 849 (quoting *Blue Chalk*, 497 S.W.3d at 835). "In addition, they provide no legal basis for concluding that the trial court did not comply with that rule." *Id.* at 849-50 (citation omitted).

Montgomery's second point on appeal is not preserved for appellate review. Point Two is denied.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur